go ahead and disconnect from the call. Counsel for Soza v. Demsich, 19-2176, please go ahead and unmute yourselves and turn your cameras on. Okay. And you have called the case? I did hear that. In all those instructions, have you called the case, Mr. Hiram? Yes, Judge. Counsel for the appellant, Ms. Fox-Young, please. No, no, no, no. I mean, call the case. The next case is case number 19-2102, Hernandez v. Fitzgerald. We're ready to hear the argument, please. Thank you. Go ahead. May it please the Court, Counsel. Good morning. I'm Justine Fox-Young, Counsel for Bradley Soza. I plan to reserve three minutes for rebuttal. When Albuquerque Police Department officers James Demsich and Thomas Melvin brandished weapons and ordered Bradley Soza to put his hands on his head, they effected an unlawful arrest without probable cause. This court has already unequivocally held that that conduct constituted a Fourth Amendment violation. When Demsich and Soza immediately began, and when Demsich and Melvin immediately began handcuffing Soza, even after he willingly put his hands on his head, this court held that Demsich and Melvin went too far, given that they had no reasonable suspicion that he was armed and dangerous. As a result, then, of this court's decision, finding the officers' conduct unconstitutional, Mr. Soza's case was dismissed. He was released after serving more than two years in custody. And yet today, these officers continue to take issue with this court's ruling and want to relitigate the Fourth Amendment question, the question of whether there was a constitutional violation, now in the civil context. There is no difference whatsoever in the analysis of the constitutional violation today than there was in 2017, when Judge Balduck wrote the opinion for the court, finding unequivocally that there was a violation. With respect to the clearly established problem, it was clearly established as of long before June 2014, when these incidents occurred, that a forceful arrest based nearly exclusively upon a is unlawful. And Demsich and Melvin's conduct, as we breathe, was clearly unlawful. It wasn't based exclusively on, I mean, it was based on the fact there wasn't unequivocally a crime. Unequivocally, the crime happened just a few minutes earlier, in that exact same neighborhood, just a few hundred feet away. And then the description was more than just his ethnicity and his gender. It was, it was very precise. And then they saw him in that location, and no evidence that there was a lot of other people around that could have also been confused with him. So that's a lot of pretty precise characteristics. Well, Judge, first of all, he is American Indian. And, and that comes out in the evidence in his testimony at the hearing on the motion to suppress. True that, in generic suspect description, as this court found, you know, Hispanic male appearing to be a Spanish male in his 40s, with a gray shirt or hoodie and a baseball cap. In Albuquerque, that's quite common. And the probable cause inquiry, as this court has found, has there has to be some probabilistic notion that that that is the person. And so when you look at a majority Hispanic state, a very Hispanic city, and we have an American Indian here, it's not a particularly helpful description. It is also true that 20 minutes after the incidents occurred, officers did encounter Mr. Sosa. Now they encountered him on the street, and gave him an order to go back to the building that he came from, and he followed the order. He was the only person they found. And it is often true that officers will arrest the only person that they find, particularly because he was male. And and they they found that he put this description, they didn't even question him upon their first. I'm sorry, Judge, are you trying? I was going to ask you what your position was on whether the the encounter with him of both officers, and indeed, I think it's very clear the immediate arrest of him without questioning whether that which was on his porch. Is it your position that was within the curtilage of the house or not within the curtilage of the house? Yes, Judge, I think it's clearly within the curtilage of the house. It's a protected space. You know, the court has found that the front porch is sort of a classic exemplar of curtilage. On his account, he's not only on his front porch, but he has his hand on the doorknob. This is in his affidavit. And he's entering the door on the officer's account. He's very close. I'm facing out but he's in that protected space of his condominium right by his front door. And so under you know, I think the modern law clearly says that's curtilage. I don't think there's any question about that. But in terms of clearly established, how do you get around the earlier Supreme Court Sentara case, which said that the front really can't currently be the law, but we are constantly instructed that we should not be the ones to correct outdated Supreme Court opinions. How do you cope with it? I mean, I'm trying to decide whether we apply curtilage or non curtilage rules to the conduct that occurred on his front porch. Certainly, Your Honor, and I don't think the court has to reach the curtilage question. But but if the court doesn't decide to apply those rules, the car loss case really acknowledges that the front porch is curtilage. I think that's later 10th Circuit law. And, and there have been numerous other cases, I mean, Florida versus Jardines is clear. And so I think the court is in safe territory. Well, it seems to me you're, I mean, even though Jardines and Sentara differ. That doesn't, Jardines didn't abrogate Sentara. But it seems to me you may have a stronger argument that after Sentara, the 10th Circuit nevertheless said, following Jardines, the front porch is curtilage. And we are obligated to follow 10th Circuit law that has interpreted prior Supreme Court law, although they didn't interpret Sentara. But, but we may be bound not by, I mean, we can't abrogate Sentara, but Sentara is out there, not for the law of whether it is or not curtilage, but it is out there for whether or not it is clearly established to these officers that they would have to conduct themselves according to the rules of curtilage rather than according to the rules of non-curtilage. Your Honor, I think that's the correct analysis, if the court decides to go there. And, and that is consistent, I think, with the car loss case. And of course, it's not a non-curtilage issue, because as you've already found in 2017, you know, it's, it's absolutely clear that this was a forceful arrest, and that it was, that it was made without probable cause. And so you have Lundstrom from 2010. Yeah, but, but just finding it was without probable cause isn't enough for the officers to justify it, if it's curtilage, because they have to do two things. One, it doesn't matter if it's curtilage or not, doesn't matter. But the second thing does matter, if it is curtilage, they also have to establish exigent circumstances, because they didn't have a warrant. And so where this becomes important is whether there is exigent circumstances clearly established, if we follow, and whether that needs to be done, depending on whether we follow Sentara or not, or whether Sentara makes the law clearly established, that you don't need to establish exigent circumstances. So I think you ought to address exigent circumstances, because if we find it's curtilage, based on 10th Circuit law, then you're going to have to persuade us about, or the issue will then be whether there was exigent circumstances. You don't, you don't persuade us of that, of course, but you have to address that question. Yes, Your Honor. And, and you're, the court is absolutely right. You, you must find that that there were not exigent circumstances, because that is an exception. I think clearly there were not exigent circumstances here. Mr. Sosa was entirely, he absolutely followed all orders that came from these officers beginning when they first saw him on the street, and then when they approached him on his porch, put your hands up, he does and they immediately cuff him. They have no reason to believe he's armed, they've already encountered it, they have no reason to believe that anybody's in danger. No, they didn't have any of those reasons, but they did have reason to believe that he was hitting inside the house, he had turned to go in the house. And we have said that exigent circumstances include the fear that someone would go into a house and dispose of evidence, such as flushing narcotics down the toilet. In this case, that risk does seem to be presented. That is, he might go in the house and wash his hands of blood, or scrape off evidence of glass or other things. And it's there, it seems to me that the risk of disposal of evidence might be considered an exigent circumstance. I'm not saying it is, I'm postulating that to you for your comment. Except that, Your Honor, he was entirely calm and submissive, and his demeanor throughout the exchange... He was. When he was arrested, of course he was. But at the time of the arrest, which happened almost instantaneously, I think, wasn't he in fact turning to go inside the house? On the officer's account, he was not. And I can give the court citations if the court would like. He was... Officers say he was facing out. Yet he says that he was finishing a cigarette and he was going to go back into his home, as anybody has the right to do. He is immediately encountered by officers with whom to raise his hands. And he does. He complies. He makes no movement. They could have stopped right there, I would argue. The arrest has already begun. But you know, there was no knock and talk. There was no attempt to do even the most basic investigation to question him from the road. No, no, no. I was accepting that it was an arrest, that the arrest was unjustified. The question is, for the officers, though, they have to say that there's no clearly established law that prohibits the arrest on a curtilage, which means that if it is a curtilage, that they had a clearly... that there was no clearly established law that would show that there was no exigent circumstances. And I think they're going to say, there is no law that denies exigent circumstances here because we think there were some. Well, I think the court's finding in 2017, the court's findings can also be applied to this analysis, Your Honor, that you're doing now. I mean, his calmness, his submissiveness, and the fact that he did not argue with officers, that he did everything. He made no move to go inside the house. There was no threat that he was going to flee at all at any time in the... But the officer said that he did make a move to go inside. He turned to go inside. We can't just disregard that, can we? Well, it's disputed to the extent that, you know, he claims that he completely followed their orders, and it's contradicted by the officer's testimony at the suppression hearing. So to the extent that the court finds that this analysis turns on that particular fact or another one, that is an issue for the determination in which we need to have the opportunity to cross examine these witnesses and go through their prior testimony, their reports. I don't think it turns on that, though, Judge, because he is completely submissive and completely compliant. And as you said, this happens almost immediately. So he's on his porch. It's reasonable for somebody who's planning to go inside to want to go inside. But he doesn't. He raises his hand. He complies in every way. And so there's just no basis for any argument. And Judge Baldock found writing in 2017, there was no basis to think that there was a threat. There was no basis to think he was armed. There was no basis to think that he wasn't compliant. And so I think those... Can I interrupt? Because I have a question. I don't want to lose all my time here. Speaking of that, but what I think that Judge Ebali is getting at is the clearly established prong. And frankly, I did not see in your brief where you even argued the clearly established prong as to your curtilage issue. I didn't see any cases cited. I didn't see any analysis of any cases. I think that's problematic for starters. And it's also problematic for you to be referring now to this court's prior opinion on the direct appeal when that would not be the case law that we would look to to determine whether the law was time that this was unlawful. You're right, Judge. And I don't refer to that opinion for the clearly established prong. That's what we're asking about, though. And I don't hear you cite... I didn't see cases cited in your brief. I didn't see an analysis of the clearly established prong in your brief. And I'm not sure I'm hearing it now. It's a secondary argument, Judge. And I think the Carr loss case, which we cite, and I'm trying to find the citation for it, goes to the fact that it was clearly established. But you're right, there's not a full analysis on that point. I, as I've said, I don't think the court needs to reach the curtilage argument. It's your burden. It's your burden to establish that it was clearly established, to establish that prong. And I don't see where you've met it. Judge, we focus really on the arrest. Right. That's a separate issue. Yes. And the fact that it was clearly established that that was an unlawful arrest, the court could stop there. With respect to the curtilage argument, if the court wants to find on that alternative basis that the defendants violated clearly established law, I think you have to look to the Carr loss case and Florida versus Jardim. Beyond that, we haven't cited additional case law, but there's sufficient case law there prior to 2014 to put these officers on notice that they're on the front porch and they can't execute this. Unless there are other questions, I'll reserve the small balance of my time. So done. Council, we're ready to hear from the government. Thank you, Your Honors may please the court. I do want to provide the court with the Carlos citation. And I do know that the Carlos case was decided in 2016, which was two years after Mr. Sosa's arrest. That is 818 F3D 988. I also I'm sorry. No, go ahead. I also know that the Carlos case does support the legality of the officer's actions here. In the case that the in the Carlos case, the court held that a police officer, just like any member of the public has an implied license to enter the home's cartilage to knock on the front door to speak with the home's office here. This was not a knock and talk case at all. This was a this I mean, this was a arrest from the instant they entered the cartilage as far as I can tell. I mean, they just went immediately to him and immediately had their guns drawn. So he his freedom was restrained from from the very first nanosecond that they entered that cartilage. Thank you, Your Honor. And I appreciate the the point of view that you've taken on that. And it is the government's position that this was an investigative detention as opposed to an arrest did quickly develop into an arrest. What facts do you have to support your view that this was an investigation? Because I view the matter the same as Judge Ebel does it. They didn't go enter the cartilage for the purpose of questioning this man. They entered the cartilage for the purpose of arresting him. And in fact, they never even asked him a single question until after they already were in the middle of handcuffing. I agree, Your Honor. And the, you know, like I said, the investigative detention from the government's perspective did quickly turn into an arrest once additional details were noticed with regard to Mr. Sosa's physical appearance. But what they had when they were you mean the blood in the glass? Right, Your Honor. That was not noticed until they already were in the process of handcuffing him. I mean, he was clearly arrested by then he had no discretion to say in the middle of my hands are up. You got the guns drawn. You're putting handcuffing on my hands. Thank you. I'd rather leave now. I think I'm free to go. And that's understood, Your Honor. And it was it was he was intended to be detained. And that is why the officers were were approaching him was to detain him because he did match the description among all the other facts that we've briefed to this court. I have a somewhat unrelated question. And that is this. What is the what did Judge Baldock in the previous case decide? What aspect of that becomes a law of the case in this case? And how does that three questions, but I'm the expert at compound questions. Well, Your Honor, there was some briefing below in response to the motion for summary judgment in terms of res judicata and collateral estoppel. And I think that's what you're referring to. However, this case, it doesn't involve the same parties. In addition, the city did provide some the defendants in this case, the officers did provide some additional testimony vis-a-vis affidavit that was not provided at the time of the suppression hearing. So some additional facts for the court to consider. Officer Demsic did not testify at the suppression hearing, but has presented an affidavit for the court's consideration here. So in terms of law of the case, the argument is that the defendants who are being sued in this matter in the civil matter are not the same as the United States, which was the prosecuting party in the criminal matter. And so I'm sorry, go ahead. Well, I guess I would like for you to follow up because I understand what you're saying, which is essentially that we could basically freshly consider the issue of the constitutional violation, despite the fact that our colleagues on the criminal panel resolved that against your client. But why would we do that when at least on the civil side, we now have additional facts as developed through the civil proceeding and through discovery, and we are to view the facts in a light most favorable to the plaintiff. How does that help you at this point, even if we were to reevaluate those facts? Well, the facts developed by Mr. Sosa, who was the defendant in the criminal proceedings, are very similar, if not almost exactly the same as they are in this proceeding. But the officers did provide the court with additional facts, and some of those facts include the nature of the call being a priority one call, which is the highest priority and indicates to them that there is an work that Officer Demsic did in terms of what he was doing as he was circling the house, what his, what he was focused on at the time, his interaction with Mr. Sosa, which was provided at the criminal suppression hearing, but vis-a-vis the testimony of Officer Melvin and not Officer Demsic himself. It also provides the details that Officer Demsic, as he approached Mr. Sosa, noticed that he was breathing heavily. It, both officers provided additional details with regard to why Mr. Sosa's behavior was suspicious. Neither officer knew at the time that Mr. Sosa was on his own porch, so it appeared to them as if Mr. Sosa was attempting to conceal himself on somebody else's, you know, it's a walkway up to the front door. But again, we can't, we can't accept the fact that these facts are contested by the plaintiff at this point, so I don't, again, I don't, I don't see the facts that would, would have any meaning as far as reconsidering the panel's decision on the criminal side. I think we probably could, but why should we? Well, in this case, the plaintiff paid some lip service to contesting these facts, but didn't actually contest them. So, for instance, the plaintiff has said that he was, in fact, by his front door. He is not able to contest the officer's viewpoint of that as him attempting to conceal himself. With regard to him breathing heavily, he does say he contests that, but he doesn't say he was not breathing heavily. All he says was he had finished smoking a cigarette and was by the front. He said he walked at a regular pace to his apartment. We can infer from that that he wasn't panning presumably heavily. I mean, it's inconsistent, at least. But not contested from, from the defense perspective. So, for those reasons, the court can reconsider the prior ruling with regard to the probable cause. However, there is also the issue... But it does raise the specter. Nonetheless, as Judge Morris correctly states it, we could disregard the previous ruling, but should we? And on the should we aspect of the case, it's a little strange for one panel of the court to view the case one and for us to take the case and view it entirely another way. Would you say that it does create some, hey, what's the Tenth Circuit up to? The panels can't seem to get their cases straight. Well, as I've mentioned that there are some additional facts that the court can rest a different opinion on that were developed in this... What part specifically are those additional facts? So there's one, two, three bullet bullet point, not the 10 minute speech. Of course not, Your Honor. And the bullet point is that the nature of the call being a priority one call involving imminent threat to life and property, involving a home invasion using violent means into an occupied... This is all due, this is all not before the previous panel, you're saying. Okay, go ahead. In some manner it was, but it wasn't... The first panel obviously knew about the break-in, the violence and the break-in. So those are absolutely not new. They probably knew about the call too. So Judge Lucero's point is just focus on new things that were not before the criminal appeal panel. All right. And Your Honor, that would be Mr. Sosa's heavy breaths as if he had been running as identified by Officer Demsich as he approached Mr. Sosa. And then also the fact that the officers observed Mr. Sosa attempting to, what they considered, conceal himself out of view, which they found to be suspicious. And those things did contribute to the reasonable suspicion and the reason why, in addition to the other facts, why forceful measures were used to detain him. But even if this court does not want to reconsider or chooses not to can still stand on the basis of qualified immunity, as this court has already recognized this morning, on the clearly established prong. And I think that the court is well aware that there has not been case law developed in the briefing in this case that would clearly have established to these officers that the conduct that they engaged in in 2014 was in violation of the law and violation of Mr. Sosa's rights. And the case that Mr. Sosa relies on, the Carlos case, again, was decided in 2016. The other cases are inapplicable to the cases here, as was cited by a few of the judges throughout the proceedings against Mr. Sosa and then Mr. Sosa's civil case as well. And why are those cases inapplicable? Are you talking about Oliver and Jardines? Are you talking about those cases? No, not Jardines or Oliver. I'm specific. You're now talking about the other issue, not the cartilage issue. Not the cartilage issue. Okay. I'm sorry. But it does go to the cartilage issue as well, because there was not clearly established law that the officers could not perform an investigative detention of Mr. Sosa on the porch area on the way to his front door, not knowing that that was his property. They're assuming that this man who matched the description precisely of the suspect is engaging in some sort of furtive behavior on somebody else's front porch, not knowing that that condo belonged to him. Does that matter if the officers didn't subjectively know that this was his cartilage? He was on his cartilage. He says he was on his front porch. Why does it matter what the officers might have thought or not thought? Well, Your Honor, the officer's perspective is important because we can't look at the facts solely from Mr. Sosa's perspective, because the 2020 hindsight of whether this was Mr. Sosa's and the court has held that we shouldn't look at these cases with 2020 vision of hindsight. We have to look at, you know, from the officer's perspective with regard to whether there's a mistake. If there's a mistake of fact, then the court should look at it. The officers never articulated that there was any reason, any objective, not subjective, objective reason to believe he was on anybody else's cartilage having a smoke. Well, Your Honor, I think that the evidence that Mr. Sosa has presented that he was smoking was not evidence that the officer saw him smoking. It was just that he was smoking as the officers were investigating. Mr. Sosa's evidence was that he was turning towards the but an officer would not be liable for a reasonable mistake or a mistake of fact, and the court should look at it from the perspective of the officers rather than with the 2020 hindsight knowing that this is Mr. Sosa's porch, and that's the Wilson versus City of Lafayette case. I did want to discuss the case that the officers did rely on in their In that case is a 2010 case. It's out of the District of Colorado. Was the trial judge here advised of the previous opinion of this court? Did he have it before him? He knew about it? The district court below in the civil case? Duh, yes. Okay, yes. Sorry, Your Honor. I was confused just because there wasn't a trial in this matter, but yes, he understood that there was an opinion. If I said trial, I must have misspoke. I didn't say that. I thought the question was, was the trial court aware? I didn't mean that there was the trial. I'm sorry, Your Honor. Yes, he was aware. There were extensive arguments about res judicata and collateral estoppel made by Mr. Sosa. The answer is yes, he was aware of it. Yes, he was well aware. Thank you. And Your Honors, I do want to cite to the Davis versus City of Aurora case. Briefly, I understand that it's not a published 10th Circuit case, but in that case, the court did held, and this was a 2010 case prior to Mr. Sosa's arrest, and something that could guide the officers in this matter. If an officer has reasonable suspicion that a suspect committed a serious crime, including burglary, it logically follows that they may presume the suspect is armed and dangerous. Thank you, counsel. Thank you, Your Honor. Miss Young, I'm going to extend an additional minute for your rebuttal. We'll keep it at that because we just cut you off so often when you're trying to make your argument and reserve your time. You may proceed. Thank you, Your Honor. I'd like to address the court's question again on cases involving clearly established prong on curtilage. We do have a question on that. Didn't the trial court just construe that inquiry on clearly established far too narrow in the way that the trial court approached it? Yes, and the court didn't reach the curtilage issue. I think if you look at this court's rulings in Siling and even last week in Brown versus Flowers and look at the cases that we cite on curtilage through that lens, that lens being you don't have to have a case with the exact facts. You have to have a case that shows that officer's conduct will follow clearly and simply from the principles elucidated in the cases. So we cite... But the thing is, though, the Supreme Court said you can't be too general. Well, I don't want to take any of your time. You proceed. I'm sorry. Just proceed. I want to call the court's attention to United States versus Martinez, which we cite on page 15 of our reply brief, in which this court in 2011, three years before this case, the facts of this case rejected the emergency aid exigency argument when officers entered a house responding to a 9-1-1 call with no reasonable basis to believe anyone was in need of immediate aid or assistance. The court has agreed... Thank you, counsel. Your time has expired. We understand the case is submitted. Counsel are excused. And after you've done so and we've gone through the...